JOSEPH S. WELLS ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54447. Promulgated June 6, 1933.

*Percy W. Phillips, Esq.*, for the petitioner.

*F. B. Schlosser, Esq.*, and *Bernard D. Hathcock, Esq.*, for the respondent.

OPINION.

BLACK: Petitioner complains of a determination of a deficiency of $177.54 in income tax for 1928 and in addition thereto claims an overpayment of tax in the amount of $2,475.27.

The petitioner is a corporation organized under the laws of the State of Utah. It was organized by the heirs of Joseph S. Wells for the purpose of holding together and administering certain securities owned by Joseph S. Wells after his death. The principal office and place of business of petitioner is Salt Lake City, Utah.

During 1916 to 1924 petitioner acquired stock in three corporations at a total cost of $10,500. During 1928 it exchanged such stock and $53.10 in cash for 288 shares of stock in a fourth company, and $1,479.53 in cash. In its return for the year 1928 petitioner reported a profit on the exchange of $23,142.90, computed in Schedule B of the return as follows:

| Kind of Property | Date Acquired | Amount Received | Cost | Net Profit |
|---|---|---|---|---|
| Ogden Gasoline Co. stock | 12/5/16 | $6,088.68 | $800.00 | $5,288.68 |
| Bennett Gasoline Co. stock | 12/5/16 | 9,600.00 | 2,000.00 | 7,600.00 |
| Ogden Paint Oil & Gl. Co. stock | 12/5/16 | | 5,200.00 | |
| | 6/18/24 | 17,954.22 | 2,500.00 | 10,254.22 |
| Total | | | | 23,142.90 |

There also appears under Schedule B of the return the following explanation: "(Received in exchange Bennett Glass and Paint Co. stock at trading price of 117.00 per share)."

The respondent accepted petitioner's valuation of the 288 shares of Bennett Glass & Paint Co. stock as $117 per share, but determined that petitioner also should have included the cash received of $1,-479.53 as a part of the sale price, which determination resulted in the deficiency herein of $177.54. No evidence was introduced by petitioner to the effect that it did not receive $1,479.53 in cash in the transaction. Hence we must regard respondent's determination as to that fact as being correct. Section 111 (a) of the Revenue Act of 1928 provides that " the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113 * * *." Section 111 (b) of the same act provides that the " amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

Petitioner and respondent seem to agree that the proper *basis* to be used is the amount of $10,553.10; that respondent was correct in adding the amount of $1,479.53 to the sale price; that under section 112 of the Revenue Act of 1928 " the entire amount of the gain or loss, determined under section 111, shall be recognized "; and that none of the exceptions to such recognition mentioned in section 112 are applicable.

Petitioner, however, contends that both petitioner and respondent were in error in finding that the 288 shares in question had a " fair market value " of $33,696 (or $117 per share) when received by petitioner in 1928; that such stock did not have any fair market value, or, if it did, such value was not in excess of $30 per share and that there was no profit to petitioner in the transaction; and that petitioner is, therefore, entitled to a refund of all the taxes paid rather than liable for the deficiency determined by the respondent.

The respondent's determination is prima facie correct and the burden of disproving it is upon petitioner. *Austin Co.* v. *Commissioner*, 35 Fed. (2d) 910; *Wickwire* v. *Reinecke*, 275 U.S. 101. In the effort to prove that respondent's determination was wrong, petitioner offered the testimony of Wallace F. Bennett, Edward L. Burton and a Mr. Adams.

Bennett testified that he was secretary and treasurer of the Bennett Glass & Paint Co.; that he had been with the company since 1920; that he had no financial interest in petitioner; that his father organized the petitioner herein and has been the president of both petitioner and the Bennett Glass & Paint Co. since each was organized; that petitioner owned some stock in the Bennett Glass & Paint Co. and also some stock in three other companies, the Bennett Gasoline & Oil Co., Ogden Gasoline & Oil Co., and Ogden Glass & Paint Co.; that the two first named corporations had their offices in Salt Lake City and that the two last named corporations had their offices at Ogden, Utah; that the remaining stockholders of all four companies were principally the Bennett interests and W. R. Wallace; that the Bennett Gasoline & Oil Co. had been organized to take over the gasoline and oil business developed in its inception by the Bennett Glass & Paint Co.; that the operation of the last two mentioned companies was had out of the same office with the Bennett Glass & Paint Co. doing the actual merchandise business of both companies; that the Bennett Glass & Paint Co. was, as its name signifies, engaged in the glass and paint business, principally at wholesale, and jobbing lubricating oils; that the latter company had a capital stock outstanding of 6,000 shares of the par value of $100 per share; that from 1923 to 1928, inclusive, its earnings averaged about $42,000 per year and during these years it paid a regular annual dividend of 6 percent or $36,000 a year; that from 1900 to 1928 there had been no sales of stock in any of the companies; that the stock in all the companies was closely held; that in 1928 it was agreed that petitioner and the Bennett family would take all the stock of the Bennett Glass & Paint Co. and the Wallace family would take all the stock of the other three companies; and that due to this agreement the Bennett Glass & Paint Co. lost gross

profit (the business it had had with the Bennett Gasoline & Oil Co.) of between $40,000 to $50,000 per year with only a compensating saving in salaries of between $14,000 to $15,000 per year.

Burton testified that he had been in the investment banking and brokerage business in Salt Lake City for about 30 years; that he was fairly familiar with the market for unlisted stocks in 1928. The following hypothetical question was asked him by counsel for petitioner:

The evidence in this case, Mr. Burton, shows that the Joseph S. Wells Association received 288 shares of the stock of the Bennett Glass & Paint Company in 1928; that the Bennett Glass and Paint Company had 6,000 shares of the par value of $100 each or a total capitalization of $600,000; that the earnings of that corporation for the period from 1923 to 1928, inclusive, had been approximately $7 per share or $42,000 a year; that the corporation had paid dividends of six per cent per year or $36,000 per year upon its capital stock from the year 1923 to 1928, inclusive; that at the time that the Joseph S. Wells Association received this stock of the Bennett Glass and Paint Company, the corporation was about to lose or surrender business which had produced a gross profit of between forty and fifty thousand dollars per year; that the savings anticipated by reason of the loss of this business were fourteen or fifteen thousand dollars with perhaps some other minor savings which might be effected; that the testimony also showed that there had never been any sales of the stock of the Bennett Glass and Paint Company from the year 1900 to the year 1928, inclusive, and that the stock of the corporation had been held during all that time in a few hands—the hands of a very few people, mainly the Bennett and Wallace families, and that as a result of the transactions which took place in 1928, the Bennett family was acquiring the stock of the Bennett Glass and Paint Company. From these facts are you able to state whether or not 288 shares of the capital stock of the Bennett Glass and Paint Company could have been sold, and if so, for approximately what price such a sale could have been made?

To this question, the witness answered he would not consider the stock worth over $25 or $30 per share marketwise; and that on account of the stock being closely held he did not believe the 288 shares could be sold at $30 per share to anyone other than Bennett or his family or some of the clerks within the organization. Adams did not appear at the hearing, but the parties stipulated that his testimony, if produced, would be to the same effect as that given by Burton. The respondent introduced in evidence petitioner's income tax return for the taxable year involved, in which petitioner reported that it had "Received in exchange Bennett Glass and Paint Co. stock at trading price of $117 per share."

Has petitioner overcome the prima facie determination of the respondent? We think not. Fair market value has been defined as "the cash price at which a seller willing but not compelled to sell and a buyer willing but not compelled to buy, both having reasonable

knowledge of all the material circumstances, will trade." *Andrew B. C. Dohrmann*, 19 B.T.A. 507, and cases therein cited.

In the instant case, two separate and distinct interests, namely, petitioner and the Wallace interests, both dealing at arm's length, effected a transfer of stocks in which the Bennett Glass & Paint Co. stock was received by petitioner " at a trading price " of $117 per share. For the six years previous thereto this stock having a par value of $100 per share had been earning 7 percent and had paid a regular annual dividend of 6 percent. Notwithstanding these facts and the further fact that the corporation in question was a business of long standing and well established, petitioner asks us to find on the basis of Burton's and Adams' testimony that the stock did not have a fair market value of more than $30 per share. The Board is not bound to accept at face value the testimony of expert witnesses, if such testimony is contrary to the best judgment of its members. *Tracy* v. *Commissioner*, 53 Fed. (2d) 575; *Uncasville Mfg. Co.* v. *Commissioner*, 55 Fed. (2d) 893; *Grand Rapids Store Equipment Corp.* v. *Commissioner*, 59 Fed. (2d) 914; *Keystone Steel & Wire Co.* v. *Commissioner*, 62 Fed. (2d) 458; and *American Chemical Paint Co.*, 25 B.T.A. 1208. It is true that the testimony shows that by reason of the rearrangement of business interests between the Wallaces and the Bennetts, the Bennett Glass & Paint Co. lost from $40,000 to $50,000 gross business which it had previously had with the Bennett Gasoline & Oil Co., with an ability to effect a corresponding saving in salaries of between $14,000 to $15,000 annually. But this fact was clearly known to all of the parties when they arrived at a " trading value " of $117 per share. It must therefore be assumed that in arriving at the fair market value of the stock in question due allowance had already been made for the loss of business, which seemed to be the principal factor considered by Burton in arriving at his opinion of value. Burton, in answering the hypothetical question put to him, knew nothing concerning the assets owned by the Bennett Glass & Paint Co., nor the gross annual business done. Ever since the enactment of the Revenue Act of 1924, Congress has provided that " In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date." See sections 204 (b) of the Revenue Acts of 1924 and 1926, section 113 (b) of the Revenue Act of 1928, and section 113 (a) (13) of the Revenue Act of 1932. Although Congress has not made the same requirement in valuing stock in a corporation as of a time other than March 1, 1913, yet it is a factor that might well have been considered in the instant case. As we have already pointed out, Wallace F. Bennett,

secretary and treasurer of the Bennett Glass & Paint Co., testified at the hearing, but he gave no testimony concerning the assets of the company which were behind the stock, and which would under ordinary circumstances to some extent at least determine its fair market value. Cf. *Commissioner* v. *Swenson*, 56 Fed. (2d) 544. We have also pointed out, that the company was capitalized at $600,000 and the witness gave no evidence that the capital was impaired at the time we are asked to find that stock having a par value of $100 per share, and paying an annual dividend of $6 per share, had only a fair market value of $30 per share. Nor did he give any testimony that this loss in gross profits due to the loss in gasoline and lubricating oil business was not made up in some other way, nor did he give any testimony that this loss in business caused the corporation thereafter to operate on a nonprofit basis and to cease its payment of dividends or even to reduce them. What the situation was in that respect, we do not know. What we do know is that for six years, including the year 1928, the taxable year which is before us, the corporation had paid a dividend of 6 percent on a par valuation of $100 per share. To say that a stock in a well established business, which for the six preceding years had paid an annual dividend of 6 percent on its par value, and which was actually exchanged at a " trading value " of $117 per share, according to the statement made in petitioner's own income tax return, and with no evidence that the capital of the corporation had become impaired, had a " fair market value " on the date of the exchange of only $30 per share, seems to us unreasonable and contrary to the actual conditions and circumstances of the case, and we feel compelled to hold that the evidence introduced by petitioner is insufficient to overcome the prima facie correctness of the determination made by the respondent.

It follows that the determination made by the respondent must stand.

Reviewed by the Board.

*Decision will be entered for the respondent.*